Bullard, J.
The last will of William Scott of South Carolina, contained the following clause, out of which the present controversy has arisen : “ I request and do empower my acting executor to lay out $5000, in the purchase of young and valuable negroes, for the use of my sister Sarah Weston, during her life, and after her death, said negroes to returnand vest forever in her sons Málachi and Robert Weston, and the heirs of their bodies.” The will was duly probated in South Carolina, and, in pursuance of the above recited bequest, that sum was employed in the purchase of slaves, which were conveyed to her by one *496 Oliver, according to the terms of the will. The legatee resided with her two sons in Louisiana, though the will was made and probated, and the testator lived and died in South Carolina, where that clause was carried into effect. Sarah Weston died in 1839, in possession of such of the slaves as survived, and their increase. Robert Weston, one of the remaindermen'; married the present plaintiff, Sarah Ann, and died, leaving one child, Robert T. Weston, who afterwards died without issue, and his mother, the present plaintiff, became his sole heir at law. In that capacity she claims in this suit the partition of the slaves in question, between herself and the heirs of Malachi Weston.
Other heirs of Sarah Weston, issues of a former marriage with Croft, intervene, and claim to participate with the other parties in the same slaves, alleging that they were the property of Sarah Weston.
The court below being of opinion, that Sarah Weston, accord ing to the laws of South Carolina, had but a life estate, with re mainder over to her two sons, who were in esse at the time of the bequest, as tenants in common, and that the plaintiff is the sole legal representative of Robert Weston, one of them, decreed a partition between her and the heirs of Malachi Weston, Jun., and the latter have appealed.
It is first urged by the counsel for the appellants, that,the Court of Probates erred in not sustaining the plea to its jurisdiction. He contends, that the heirs of Malachi Weston being in possession, and the parties not claiming as heirs of ¡Sarah Weston, the action is essentially petitory, and should have been brought in a court of ordinary jurisdiction. Pie relies upon the case of Badon’s Heirs v. Foucher et al. 15 La. 455.
In that case the intervening party set up a title adverse to that of the original parties in the Court of Probates, who were prosecuting an action of partition of property held by them as coheirs, and this court held, that although the Court of Probates might inquire into questions of title arising incidentally between parties litigating before it, with a view of carrying out the partition ; yet that it was incompetent to pronounce upon the question of title asserted by the intervenors, which was wholly adverse to that of the parties, derived from a different source, and *497 not from a common ancestor. In the case now before us, the party pleading to the jurisdiction traces back his title to the same source with that of the plaintiff, to wit, the will of William Scott. It is true, the property to be divided does not belong to the estate of Sarah Weston, and the parties do not claim as her heirs, (except the descendants of Croft, whose pretensions will be noticed hereafter,) but both the heirs of Malachi Weston, Jun., and of Robert Weston, claim as legatees under the will of Scott. The court, therefore, did not err in maintaining its jurisdiction.
The next question which has been discussed is, whether the lights of the parties are to be decided according to the law of South Carolina, or that of Louisiana. Although the legatees, Mrs. Weston and her sons, were residents of Louisiana, yet the testator, William Scott, was a citizen of South Carolina. His will was made, published, probated, and carried into execution there. Its validity and effect, and the degree of estate which it conferred upon the legatees, especially as it relates to personal effects situated in South Carolina, must, in our opinion, be tested by the law of the domicil of the testator and not that of the legatees. It is, therefore, to the laws of that State we are to look for guidance in pronouncing upon the rights of the parties, so far as they depend upon the will. 3Cranch, 319. Story, Conflict of Laws, 19, 30, 232-5.
The conveyance of Oliver may be laid out of view, and the parties regarded as holding directly by the devise in the last will of Scott, although it purports merely to direct the investment of a sum of money; for, in the construction of wills, money ordered to be invested in any species of property, is always regarded as if the property itself were devised. Money to be employed in the purchase of land, is treated as land.
In the construction of wills, the intention of the testator is to be ascertained and followed, and the language used by him to be understood according to its ordinary, popular acceptation. In the case now before us, the testator directed the investment of $5000 in slaves, “ for the use of [his] sister, Sarah Westonj during her life, and after her death, said negroes to return and vest forever in her sons, Malachi and Robert Weston, and the heirs of their bodies.” The intention of the testator appears to us *498 quite clear. It was to give a life estate in the slaves to his sister, and the full property in them, or the fee, after her death, to his two nephews, who were in existence at the time of the devise; and the question is, whether such a testamentary disposition be valid by the laws of South Carolina, and what degree of estate vested in the two sons, and when did it vest.
It is admitted that the common law of England, modified by statute, prevails in that State ; and that we may refer to standard works upon that system of jurisprudence for information on this subject. Slaves, it is also shown, are considered in South Carolina as personal property or chattels.
Robert and Malachi Weston we have said, had an estate in remainder, which is defined to be an estate limited to take effect and be enjoyed after another estate is determined. 1 Blackstone, book 2, chap. 11. Both their interests are in fact only one estate; the present term of years, and the remainder afterwards, when added together, being equal only to one estate in fee. They are, indeed, different parts, but they constitute but one whole. They are carved out of one and the same inheritance. They are both created, and may both subsist together; the one in possession, and the other in expectancy. Ibid.. Loco citato. We learn from the same authority, that if A. be tenant for life, remainder to B. in esse, the remainder is vested* in him at the creation of the particular estate.
According to these principles, which it appears from authorities before us, are recognized by the courts of South Carolina as existing in that State, we do not doubt, that the estate in remainder vested in Malachi and Robert Weston; and that, on the death of their mother, and the termination of the particular estate, they or their heirs had a right to the possession and enjoyment of the estate as tenants in common. See statute of South Carolina, in the record.
The pretensions of the heirs of Croft, childen of Sarati Weston by a former marriage, rest upon the hypothesis that the slaves vested in full property in Sarah Weston, in whose right they claim, and that they descended to be equally divided between all her heirs, according to the laws of Louisiana. They contend, that the will of Scott contains a substitution, which is reprobated *499 by our laws, and that consequently the full property vested in Sarah Weston. It is not so clear that .even according to our laws, the disposition in the will would be regarded as a substitution. The testator might well give to one the usufruct, and to another the full property ; and the testament might bear that construction, as that appears to have been manifestly the intention of the donor. Be that as it may, we are clearly of 'Opinion that the validity of the will, and the title of the parties under it, are to be settled according to the law of South Carolina, and not that of Louisiana.
But it is only as to the degree of interest acquired by Mrs. Weston, and her sens under the will, that the law of South Carolina is to govern. When the property was brought into this State, and one of the co-proprietors died, his title descended according to the law of Louisiana. Whoever was his heir according to our laws, became at once vested with all his property situated here, wherever it may have been acquired, or by whatever title held. On the death of Robert Weston, his son, who survived him was seized at once of his right in the slaves in question; and on his death, his mother succeeded to his rights in the same way. We cannot adopt the laws of South Carolina as to the right of inheriting property situated here, although originally acquired in and brought from that State. The laws of no State can have such extra-territorial operation, or give such a direction or destination to personal property acquired within its limits when afterwards removed from it, as to derogate from the laws regulating the distribution of estates in the State to which it may have been removed. We are not to look to the laws of South Carolina to ascertain who is the heir of Robert Weston, in relation to particular property brought by him or his mother from that State, and of which he died possessed here.
We conclude, that the court below did not err in coming to this conclusion, and in decreeing a partition between the plaintiff Sarah Ann Penny, and the heirs .of Malachi Weston.

Judgment affirmedl